## The People on the relation of Theron F. Giddings v. The Quartermaster-General.

*Mandamus: Bounty: Assignment of claim, not proved: Request for certificate: Substitute not a volunteer.* On an application to the Quartermaster-General for a certificate of amount due for a state bounty on behalf of an assignee of the person entitled to such bounty, the assignment of such claim must be presented as evidence of the assignee's right. A petition for mandamus to compel the Quartermaster-General to issue such certificate must show that a request for such certificate, accompanied by the proper evidence, has been made. A substitute is not within the statutes of this state providing for the payment of bounties to volunteers.

*Heard July 11.    Decided July 12.*

Application for *mandamus.*

The petition of the relator sets forth that James Flanigan and George Norton enlisted, and were mustered into the military service of the United States, as privates, on the 20th day of March, 1865, and after the passage of an act of the legislature, approved February 4th, 1865, providing for the payment of bounties to volunteers, entitled "An act to provide for the payment of bounties to volunteers in the military and naval forces of the United States," and that said persons enlisted as volunteers, below the rank of commissioned officers, and were each credited to a military sub-district of this state, to wit: the said George Norton was credited to the town of Lockport, in the county of St. Joseph, and the said James Flanigan was credited to the town of Brady, in the county of Kalamazoo, all in the second congressional district of this state, upon the quota assigned to said townships respectively, under the call of the President of the United States for troops, made last before the date of the passage of said act of the legislature; that said James Flanigan and George Norton were each, by the provisions of said act of the legislature of this state, entitled to the sum of one hundred and fifty dollars as a

state bounty, to be paid by the Quartermaster-General of this state; that George Norton and James Flanigan each assigned to W. J. Handy all their right, title, and interest in and to the said state bounty, on the 3d day of November, 1865, by an instrument in writing bearing that date, and that the said W. J. Handy has assigned the same to your petitioner; that at the time of such enlistment, as aforesaid, the said George Norton made an affidavit (which is attached to the petition) that he was not a resident of this state, but of the state of Kentucky; and the said James Flanigan made an affidavit that he was a non-resident of this state, and a resident of the state of Ohio; that, at the time of making said affidavit, the then acting provost marshal of the United States for the second congressional district of Michigan, annexed to the said affidavit, his certificate that said Flanigan was mustered into the United States service, and credited to the town of Brady, Kalamazoo county, and to the said affidavit of George Norton, his certificate that said Norton was mustered into the service of the United States, and credited to the town of Lockport, St. Joseph county; that he has caused said affidavits and certificates to be presented to William A. Throop, Quartermaster-General of this state; that the said Quartermaster-General has refused to pay the sums as required by the provisions of that act, and did, on or about the 18th of July, 1871, reject and disallow said claims for state bounties; and has refused to make the necessary certificate showing the amount due, upon which the Auditor General could draw his warrant for the payment of the money.

The prayer is for a *mandamus* commanding the respondent to pay said state bounties, for said James Flanigan and George Norton, to the petitioner, or to make his certificate of the amount due for said state bounties; and for such other order and relief as may be just, in the premises.

A demurrer *ore tenus* to the petition was interposed.

*Dwight May, Attorney General,* for the respondent.

If Norton and Flanigan have any claim against the state for bounty, the same is not assignable.—See *Sess. L. 1871, p. 207.*

They having been mustered as substitutes and not as volunteers, are not entitled to any bounty.—*Sess. L. 1863, p. 60; Sess. L. 1864, p. 53; Sess. L. 1865, p. 29.* In all these acts it is expressly provided that the payment is to be made to volunteers. The object of the statutes was to induce persons to volunteer, and there is not a syllable in any act, intimating that any state bounty would be paid to a substitute. Norton and Flanigan were not volunteers within the meaning of the statute. Both the letter and spirit of the statute relate solely to volunteers in the ordinary and usual acceptation of that term, and were not intended to include drafted men, or those who took the place of such, as substitutes.

*Arthur Brown,* for the relator.

We claim that these persons, although substitutes before draft, were none the less volunteers. The statute makes no exception whatever, but gives "to each volunteer," a uniform bounty. These were enlisted "of their own free will," and, therefore, in the broadest sense, volunteers. They took the place of citizens, who, if they had gone themselves, would have been entitled to bounty. The case of *People v. Quartermaster-General, 12 Mich., 191,* decides that a substitute after draft, may, by volunteering, become entitled to bounty.

In the practice of the department of the United States, a substitute before draft, has always been considered a volunteer, and entitled to bounty as such. The question presented by this case has been settled in Pennsylvania.— *McClure's Estate, 63 Penn. St., 226.*

GIDDINGS v. QUARTERMASTER-GENERAL.

When these parties had once enlisted, their right to the bounty became vested; no subsequent statute could take it away, or curtail its enjoyments.—*9 Mich.*, *327.* As a part of that right, he could sell it, and assign it to any person he saw fit. The statute itself provides for payment to an assignee.—*Sess. L. 1865, p. 30, § 2.*

The relator in this case acquired his right to the bounties by purchase, before the passage of the act of 1871, and that act could not take away his right, although it might prescribe the mode of payment.—*Sess. L. 1871, p. 207.*

THE COURT held that the petition did not bring the case within the law as the relator construes it. There is no showing that the second assignment from Handy to the relator, or any evidence thereof, was brought to the notice of the respondent, nor that any request for the certificate was made of the respondent. In the absence of these the respondent was under no obligation to issue the certificate.

THE COURT also held, *Christiancy, Ch. J.,* dissenting, that a substitute is not a volunteer within the meaning of the acts providing for bounties to volunteers. These acts apply only to volunteers, as the people ordinarily understand the term, and not to one who enters the service in the place of another, as a substitute for hire.

*Mandamus* refused.