HENRY B. STONE *et al.*

*v.*

MILO G. KELLOGG.

*Filed at Ottawa November 9, 1896—Rehearing denied March 3, 1897.*

1. CORPORATIONS—*right of stockholder to examine books of corporation—when enforced by mandamus at common law.* A stockholder, to enforce his right to examine the books and records of a corporation by *mandamus,* was, at common law, required to show some specific interest at stake which rendered the examination necessary or beneficial.

2. SAME—*statute concerning stockholder's right of examination enacted in view of the common law restrictions.* The statute concerning a stockholder's right to inspect records and books of account of a corporation (Rev. Stat. 1874, chap. 32, sec. 13,) was enacted in view of the common law restrictions on such right, its purpose being to protect the minority stockholders against the power of the majority and against mismanagement by faithless officers.

3. SAME—*stockholder's right to examine books and records is absolute.* Aside from the express limitation that the right of a stockholder to examine a corporation's records and books of account shall be exercised at reasonable times, and the implied limitation that it shall not be exercised from idle curiosity or for unlawful purposes, the right is absolute.

4. SAME—*the custodian of the records cannot question stockholder's motive for examination.* The custodian of the books and records of a corporation cannot question a stockholder's motive for an examination thereof, and if he refuses an inspection for alleged improper motives he holds the burden of proof, upon petition by a stockholder for *mandamus.*

5. SAME—*right of stockholder extends to examination of all records and papers.* The right of a stockholder to examine the records and books of account of a corporation extends to all papers, contracts, minute books or other instruments from which he can derive any information which will enable him to better protect his interests and perform his duties.

6. PLEADING—*when answer to petition for mandamus by stockholder is insufficient.* An allegation in an answer to a stockholder's petition for *mandamus* to compel officers of a corporation to permit him to examine its books and papers, that the stockholder has not been denied the right to examine any record or book to which he was lawfully entitled, is argumentative, and obnoxious to demurrer.

*Stone* v. *Kellogg,* 62 Ill. App. 444, affirmed.

APPEAL from the Appellate ·Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. RICHARD W. CLIFFORD, Judge, presiding.

Appellee filed his petition in the circuit court of Cook county for a writ of *mandamus* to compel the appellants, respectively the president and secretary of the Central Union Telephone Company, an Illinois corporation, to permit him to examine the records, books of account and papers of the company. Appellee owns 761 shares, of the par value of $100 each, of the capital stock of the company, and is, and has been from its first organization, one of its directors.

The petition alleged, among other things not necessary to be set out here, that for several years prior to June 22, 1894, the petitioner, owing to poor health, absence from the country and other engagements, had not given the affairs of the company such careful attention as his personal and official interests demanded, and having heard rumors that the agents and officers of the company immediately intrusted with the management of its affairs were not administering their trusts for the interests of the shareholders, he, on the 22d day of June, 1894, as such director and stockholder, and with proper motives, applied to the defendant Wilson S. Chapman, the secretary of said company, to see the minute book of the board of directors, which said secretary permitted him to do; that after examining said minute book the petitioner asked to see the minute book of the executive committee, (the business of the company, under its by-laws, being almost wholly managed by its president and executive board appointed by the board of directors,) but Chapman informed the petitioner he could not see such minute book without the permission of the president of the company, Stone, and also informed the petitioner that he thought he ought not to see such record,

because the petitioner had filed a request with the department of justice of the United States that the government should institute suit to repeal the Berliner patent, in which the Central Union Telephone Company was interested, as a licensee of the American Bell Telephone Company; that on or about May 25 the petitioner again called on Chapman and renewed his request to see such minute book of the executive committee, but Chapman told the petitioner that Stone, the president of the company, had directed him to refuse the petitioner the privilege of seeing such minute book; that the petitioner then asked to see the contracts between the American Bell Telephone Company and the Central Union Telephone Company; that Chapman refused to permit him to do so, but referred the petitioner to Stone, the president of the company; that the petitioner and Stone had a conference about four or five o'clock of the same day, May 25, and Stone refused to allow the petitioner the right to see such minute book and contracts, giving as his reason that the petitioner had caused the institution of the suit by the United States government to annul the Berliner patent, and a suit against the Western Electric Company, and a suit against the American Bell Telephone Company and the Great Southern Telephone and Telegraph Company; that after some more attempts to meet Stone, the petitioner and he had another conference on the 14th of June, 1894, when Stone again denied the request of the petitioner, and told him to present the matter to the board of directors, which petitioner refused to do; that petitioner then made a formal demand, in writing, on the president of the company, Stone, on the 18th day of June, 1894, to be permitted to examine the records and books of the company, both collectively and each separately, specified in such demand; that to this demand Stone replied by letter of June 20 acknowledging the receipt of the said demand, but again denying the request until petitioner should apply to the board of

directors and have them pass on the matter; that to this letter petitioner replied renewing his demand as director and stockholder, and declining to apply to the board of directors; that on the 21st of June, 1894, petitioner addressed to the secretary, Chapman, a letter informing him that he should present himself at the company's office on June 25, 1895, for the purpose of examining the records and books, in accordance with the letter he had addressed to Stone, and on the 25th, in pursuance of said letter, petitioner presented himself at the office of the company for such examination, but was refused permission to make it.

The petition then proceeds as follows: "Your petitioner has been informed and believes that when, nearly twelve years ago, the American Bell Telephone Company obtained the control of the majority of the stock of the Central Union Telephone Company, or its predecessors, there was a writing entered into or an agreement made and reduced to writing, and assented to by the American Bell Telephone Company, which regulated the relations between the companies and was intended to conserve and protect the interests of the minority stockholders, in view of the fact that the American Bell Telephone Company was to have the ownership of the majority of the stock of the Central Union Telephone Company, and would have interests in the management of the Central Union Telephone Company adverse to the interests of the other stockholders, and your petitioner believes that the present management of the Central Union Telephone Company is in important particulars contrary to the express terms of said writing or agreement, and your petitioner believes that said writing or agreement is among the records and the papers of the Central Union Telephone Company controlled by said Stone and Chapman. Your petitioner desires to obtain access to this writing or agreement relating to the working arrangement of the companies, as well as all other books and records contemplated in his said letter of June 18, marked 'Ex-

hibit C.' And the complainant further gives the court
to understand and be informed, that he has reason to
fear and believe, and does fear and believe, that by
reason of the relations of the American Bell Telephone
Company and its control thereof, by reason of its owner-
ship of a majority of the stock thereof, and the further
facts as to the large salary paid to defendant Stone,
and also that defendant Stone is related by marriage
to the Forbeses, who are among the largest owners of
the stock of the American Bell Telephone Company, the
affairs of the Central Union Telephone Company have
not been and are not now carefully and economically
administered, but that contracts and business arrange-
ments have been made and are now in force with the
American Bell Telephone Company which have been en-
tered into with a reckless disregard of the interests and
rights of such minority holders, and with a desire rather
to serve the interests of the American Bell Telephone
Company than of the Central Union Telephone Company;
that while complainant does not and has not contem-
plated any litigation against the Central Union Tele-
phone Company, if he could have these evils corrected,
or if he could first induce the stockholders and board
of directors of said company to correct the same, he has
intended, by all lawful means within his power, to induce
the said company to so conduct its affairs as shall best
subserve the interests of the stockholders, and not dis-
pose of large portions of its revenue to the American
Bell Telephone Company in payment of royalties on
articles no longer covered by patents, or as rentals for
articles which could be purchased outright at much less
than the amount paid as rent per annum, or conduct the
business in other ways contrary to the interests of the
Central Union Telephone Company; that it has been, is
now and will be his course of conduct to pursue his course
with a view to secure the honest and economical admin-
istration of the affairs of this company, and that he has

no other purpose in view, and has no desire to publish the result of his investigation to the courts or to the public in any way, and is willing to submit to any reasonable restrictions, consistent with the due and adequate protection of his own interests, which the court may think it has power to impose, and to give any reasonable security to abide by such restriction, reserving to himself only the right, in the event that it becomes necessary in his judgment so to do, to seek such relief as he may be advised the law affords to protect his interest in said company, which embraces a large portion of his fortune. By means whereof the petitioner is prevented from examining the books of account and records of said Central Union Telephone Company as he is by law entitled to do, and of which the said defendants have the sole custody and control, wherefore the petitioner prays a writ of *mandamus*, directed to said Henry B. Stone and William S. Chapman, president and secretary, respectively, of the Central Union Telephone Company, commanding them, and each of them, forthwith to admit the complainant to the office of the said Central Union Telephone Company, and to give to him full access to all books of account and records of the said company, including herein the records of the executive committee of the board of directors thereof, and of all the contracts entered into by said company with the American Bell Telephone Company, or by either of said companies, through any agent, officer or servant thereof with the other, and that such admittance and access be permitted from day to day during business hours, and in such a manner as not to interrupt the order of business of the corporation, to the complainant, until the same shall have been completed, and that such further order may be made in the premises as justice may require," etc.

The petitioner's letters mentioned in the petition, and the replies thereto, were attached as exhibits, and contained a more minute specification of the records, books

and papers he demanded permission to examine, and his reasons therefor.

The principal answer, that of appellant Stone, filed to the petition, among other things states: "This defendant further and expressly denies that either this defendant or any other officer of said company has at any time refused to the petitioner the right to examine any of the records or accounts of said company which the petitioner was lawfully entitled to examine, either as a stockholder or director of said company; and he avers that according to his best information and belief the said petitioner is, and at all times has been, fully acquainted with all the facts which by his petition he represents himself as desiring to ascertain, and that the real purpose of his application for books, papers, records and accounts is not, and never has been, the ascertaining of any facts which the petitioner was legitimately entitled to know, but that such purpose is, and always has been, to discover some possible ground of attack upon said company and its management, contrary to the interests of said company and for the private advantage of the petitioner." The answer then relates the history of the organization of the company and of its management; alleges that petitioner has neglected his duties as director, failed to attend the meetings of the board, and had never made known his grievances at any meeting of the directors; that the president and executive committee are subject to the direction of the board, and will, on its direction, furnish any information desired; that as director petitioner should exercise his rights through the board, and as an individual he has no greater rights than any other stockholder, and that he has never sought any investigation at any meeting of the board, but that defendant had offered to petitioner to call a meeting of the directors for the consideration of petitioner's grievances, which offer petitioner declined; that petitioner, as a stockholder, does not seek the examination of the records, books and papers in good faith,

but in furtherance of his own interests outside and in hostility to the company; that it was necessary to the business success of the company to enter into agreements with the Bell Telephone Company, whereby the perpetual and exclusive right and license to use its patents were secured, among the most important of which was the Berliner patent, which petitioner had instigated a suit to overthrow, and which, so long as it is in force, prevents the destruction, to a large extent, of the company's business by rival companies; that within two or three years past petitioner has claimed ownership of patents for valuable improvements in the multiple switch-board, a useful appliance to the company, and in which the Bell company has a large interest, and that should he succeed in establishing his ownership therein he would destroy the protection the company now enjoys in its use, and be in a position to exact large tribute from the company and all other telephone companies, and which interest, if secured by him, would far outweigh his interest as a stockholder in the Central Union company; that "the attack upon the Berliner patent, and the subsequent attack upon the telephone companies supposed to be controlled by the Bell company, of which the present attack is one, were made in pursuance of threats on behalf of said Kellogg that the Berliner patents would be attacked unless the claims of said Kellogg to the multiple switch-board patent should be recognized and conceded, or unless settlement of his said claims in that behalf should be made at a very large amount; and this defendant charges the fact to be, that neither this suit nor the investigation which said Kellogg professes a desire to make is for the genuine purpose of subserving the interest of the Central Union company or its stockholders, but for the advancement of private and selfish interests of said Kellogg, and that the action of said Kellogg in that behalf is in violation of his duties as a director and in hostility to the just rights and interests of the Central Union company;

that the institution of legal proceedings, at the instance of said Kellogg, to annul and cancel the Berliner patent is a source of great encouragement to all competing companies and an injury to the Central Union company, and would result, should said suit prove successful, in great damage to the Central Union company. He further shows that throughout said entire scheme the said Kellogg has acted secretly, without conference or consultation with any of his fellow-directors in the Central Union company and without informing them of his intentions or purposes. Defendant further says that the broad demands of said Kellogg for an opportunity, by himself and such others as he may allege to be his agents, to make transcripts of contracts, correspondence and other papers covering pending negotiations and all other matters of the Central Union company, and his refusal of the written offer of this defendant as contained in 'Exhibit D' to the petition herein, are in furtherance of the schemes of said Kellogg and for purposes hostile to the rights of the Central Union company, and are in excess and an abuse of his rights as a member or officer of said company in any capacity. * * * But this defendant is advised, and therefore states, that neither by the common law nor by the statute of Illinois has a stockholder the right, even when acting from proper motives and desiring information for a lawful and proper purpose, to inspect and examine all papers, contracts, correspondence and documents belonging to the company, or to be informed, either by inspection or otherwise, of the exact situation of contracts and business affairs in which said company is concerned; that in the nature of the case many matters of corporate business are from time to time under negotiation and in delicate stages of advancement, where publicity would damage, and in many instances defeat, the entire negotiation, and that such is the fact with many of the affairs of the Central Union company, and particularly in its relations with the Bell company and the American Telegraph and Tele-

phone Company respecting royalties to be paid by the
Central Union company, and the extent of its territorial
rights; that the particular subjects referred to by said
Kellogg in this petition, and the exhibits thereto, are
now, and were at the time of the institution of this suit,
in process of negotiation, and that until the questions
now pending in reference to the Berliner patent are judi-
cially determined, it seems unwise, and might be impossi-
ble, to make final agreements or arrangements, but that
temporary arrangements were necessary and have been
made, and are now existing, which are terminable upon
short notice by either party; that final arrangements
or agreements can only be concluded by the company
through action of its board of directors; that the records
of the company consist of the records of the action taken
by the board of directors, and these have been freely ex-
hibited to said Kellogg, as is shown by the allegations of
his petition; that the books of account of the company
are open to inspection of said Kellogg at all convenient
times, and access to them has never been refused him."

The court sustained petitioner's demurrer to defend-
ants' answers. They elected to stand by their answers,
whereupon final judgment was given to petitioner for a
writ of *mandamus* against the defendants, as president
and secretary of the company, "commanding them, and
each of them, forthwith to admit the complainant to the
office of the said Central Union Telephone Company, and
to give him full access to all books of account and rec-
ords of said company, including herein the records of the
executive committee of the board of directors thereof,
and to all the contracts entered into by the said company
with the American Bell Telephone Company, or by either
of said companies, through any agent, officer or servant
thereof with the other, and that such admittance and ac-
cess be permitted from day to day during business hours,
and in such a manner as not to interrupt the business
of the corporation, to the complainant, until the same

shall have been completed." Judgment was also for costs against defendants. This judgment was affirmed on appeal to the Appellate Court, and the appellants now seek its reversal by further appeal to this court.

WILLIAMS, HOLT & WHEELER, for appellants:

At common law the right to inspection by a shareholder is not absolute, but is qualified by considerations of motive, purpose or circumstances. *Lyon* v. *Screw Co.* 17 Atl. Rep. 61.

Inspection may be refused when there is reason to apprehend an improper use of the privilege by making unauthorized entries. *Rosenfeld* v. *Einstein*, 46 N. J. L.479.

The right should be used with great care, and the reasons for its exercise must be clear and cogent. *People* v. *Railway Co.* 11 Hun, 1.

Our statute gives the right to inspect "records and books of account."

A statute giving power to require books to be brought into the State does not cover papers and memoranda. *Huylar* v. *Cattle Co.* 42 N. J. Eq. 139.

"Books of account" covers books showing current commercial transactions. *Lyon* v. *Screw Co.* 17 Atl. Rep. 61.

Under a statute giving the right to inspect books an application for all records and papers is too broad. *People* v. *Walker*, 9 Mich. 328.

Where the application is too broad it should be refused altogether. *Rosenfeld* v. *Einstein*, 46 N. J. L. 479; *Regina* v. *Trustees*, 5 B. & A. 978.

CHARLES H. ALDRICH, for appellee:

The stockholders of a corporation had, at common law, a right to examine, at any reasonable time, any one or all of the books and records of the corporation. *Iron Co.* v. *Commonwealth*, 105 Pa. St. 111; *Huylar* v. *Cattle Co.* 40 N. J. Eq. 392; 1 Cook on Stock, etc. sec. 511; *Lewis* v. *Brainerd*, 53 Vt. 519.

Unless the charter provides otherwise, a shareholder in a trading corporation has the right to inspect its books and papers, and to take minutes from them, for a definite and proper purpose, at reasonable times. The law is, that the books and papers of the corporation, though of necessity kept in some one hand, are the common property of all stockholders. Grant on Corp. 311; 2 Phillips on Evidence, 313; Redfield on Railways, 227; Angell & Ames on Corp. sec. 681; *Martin* v. *Oil Works*, 28 La. Ann. 204; *Iron Co.* v. *Commonwealth*, 105 Pa. St. 111; 113 id. 563.

Corporators have always, on showing a good reason, though not for curiosity's sake, a right of access to and inspection of all the books, muniments and papers belonging to the corporation, and if this general right be denied or obstructed, a *mandamus* to inspect may be had on proof of the refusal of the right to and reason for the inspection. Grant on Corp. 311; High on Ex. Legal Rem. sec. 308; Angell & Ames on Corp. sec. 707.

Mr. JUSTICE CARTER delivered the opinion of the court:

The question whether or not appellee is entitled to a writ of *mandamus* to compel appellants, as officers of the Central Union Telephone Company, to permit him to examine the records, books and papers of the corporation, is presented by demurrer to appellants' answer to the petition. Appellee is both a stockholder and a director in the company. As a stockholder, owning more than $75,000, at its face value, of the capital stock, he had large interests to protect, and as a director he had important duties to perform. In both capacities he had the undoubted right to inform himself (and, if necessary, by examination of the records, books and papers of the company at reasonable and proper times,) as to the affairs and condition of the company, for the better protection of his own interests and the performance of his duties. The petition was amply sufficient, and unless it can be said that the answer showed sufficient reason for refusing

the writ, the judgments of the courts below granting it must be affirmed.

At common law the stockholders of a corporation had the right to examine, at reasonable times, the records and books of the corporation. 1 Cook on Stock and Stockholders, sec. 511; *A. & F. R. R. Co.* v. *Rowley,* 9 Fla. 508; *Queen* v. *Maraguita Mining Co.* 1 El. & El. 289; *King* v. *Taylor Co.* 2 Barn. & Ad. 115; *In re Burton and the Saddlers' Co.* 31 L. J. Q. B. 62; *King* v. *Wilts and B. Canal Nav. Co.* 3 Ad. & El. 477; *King* v. *Clear,* 4 B. & C. 899; *Queen* v. *Grand Canal,* 1 Irish L. R. 337; *Birm Bristol Co.* v. *White,* 12 B. 282; *Mutter* v. *Eastern and Mid. Railway Co.* 38 Ch. Div. 92; 105 Pa. St. 111; 113 id. 563; Angell & Ames on Corp. sec. 681; Redfield on Railways, 227; Grant on Corp. 311; 2 Phillips on Evidence, 313; *Martin* v. *Bienville Oil Works,* 28 La. Ann. 204; *Foster* v. *White,* 86 Ala. 467; *Winter* v. *Baldwin,* 89 id. 483; *State* v. *L., S. & F. R. R. Co.* 29 Mo. App. 301; *State* v. *Bergenthal,* 72 Wis. 314; *State* v. *Sportsman's Park Ass.* 29 Mo. 326. But the writ of *mandamus* would not issue as a matter of course, to enforce a mere naked right or to gratify mere idle curiosity, but it was necessary for the petitioner to "show some specific interest at stake rendering the inspection necessary, or some beneficial purpose for which the examination is desired." (High on Ex. Legal Rem. sec. 310; 2 Spelling on Ex. Relief, sec. 1612.) But owing to the great increase in the number of stock corporations and the volume of business transacted by them, this right of inspection of the corporate books by the individual stockholder became so important that many of the States of the Union have made specific provision by statute for its enforcement. Section 13 of chapter 32 of the Revised Statutes of this State is as follows: "It shall be the duty of the directors or trustees of every stock corporation to cause to be kept at its principal office or place of business in this State, correct books of account of all its business, and every stockholder in such corporation shall have the right, at all reasonable times, by himself or by his attor-

ney, to examine the records and books of account of the corporation."

In *Foster* v. *White*, 86 Ala. 467, it was held that a similar provision of the statutes of Alabama was not merely declaratory of the common law, but that "the statute was enacted in view of the restrictions and limitations placed by the common law upon the exercise of the right, and the purpose is to protect small and minority stockholders against the power of the majority, and against the mismanagement and faithlessness of agents and officers, by furnishing mode and opportunity to ascertain, establish and maintain their rights and to intelligently perform their corporate duties. * * * The only express limitation is, that the right shall be exercised at reasonable and proper times. The implied limitation is, that it shall not be exercised from idle curiosity or for improper or unlawful purposes. In all other respects the statutory right is absolute. The shareholder is not required to show any reason or occasion rendering an examination opportune and proper, or a definite or legitimate purpose. The custodian of the books and papers cannot question or inquire into his motives and purposes. If he has reason to believe that they are improper or illegitimate, and refuses the inspection on this ground, he assumes the burden to prove them such. If it be said this construction of the statute places it in the power of a single shareholder to greatly injure and impede the business, the answer is, the legislature regarded his interests in the successful promotion of the objects of the corporation a sufficient protection against unnecessary or injurious interference. The statute is founded on the principle that the shareholders have a right to be fully informed as to the condition of the corporation, the manner in which its affairs are conducted, and how the capital to which they have contributed is employed and managed." See, also, *Huylar* v. *Cragin Cattle Co.* 40 N. J. Eq. 392; *Swift* v. *State*, 6 Atl. Rep. (Del.) 856.

This interpretation of the statute of Alabama made by the Supreme Court of that State is, we think, a correct one, and is as liberal to the officers and agents of the corporation having the custody of its books, or to the majority of the stockholders or directors under whose orders they may act, as would be permissible to give to our own statute. Measured by the rule of law thus declared, appellants' answer was clearly insufficient. The statement therein that appellee had not been refused permission to examine any of the records and accounts which he was lawfully entitled to examine either as a stockholder or director, is a mere argumentative denial of the allegations contained in the petition and is obnoxious to the demurrer as interposed. It cannot be tolerated that a stockholder can be denied the exercise of so valuable a right given to him in express terms by the statute, by those who are the mere agents of the stockholders, upon the plea as in effect set up in the answer in this case, that the petitioner had not been denied any information to be derived from an examination of the books and papers which he was legitimately entitled to know. As a director and stockholder he was legitimately entitled to know anything and everything of which the records, books and papers of the company would inform him, so far as anything in the answer shows to the contrary. *People* v. *Throop*, 12 Wend. 185.

There was no sufficient allegation in the answer from which it can be made to appear, upon the admission made by the demurrer, that the object and purpose of the petitioner were not legitimate or were to injure the corporation. It is no sufficient answer to such a petition to impugn the motives of the petitioner. In his petition he states: "That it has been, is now and will be his course of conduct to pursue his course with a view to secure the honest and economical administration of the affairs of this company, and that he has no other purpose in view, and has no desire to publish the result of his investiga-

tion to the courts or to the public in any way, and is willing to submit to any reasonable restrictions, consistent with the due and adequate protection of his own interests, which the court may think it has power to impose, and to give any reasonable security to abide by such restriction, reserving to himself only the right, in the event that it becomes necessary in his judgment so to do, to seek such relief as he may be advised the law affords to protect his interest in said company, which embraces a large portion of his fortune." We agree with the Appellate Court that the courts are not without power to prevent an abuse of the rights which the petitioner enjoys by virtue of his relation to the company. 4 Thompson's Com. on Law of Corp. secs. 4406-4425.

The objection that the right to examine the records and books of the company does not embrace the right to examine the contracts and other papers mentioned in the pleadings we regard as without force.

Finding no error the judgment of the Appellate Court will be affirmed.                              *Judgment affirmed.*