Clarence H. Venner, Appellant, v. Chicago City Railway Company et al., Appellees.

Gen. No. 14,853.

1. CORPORATIONS—*when acts applicable to corporations organized by special charter.* Statutes regulating corporations generally do not apply to those previously organized by special charter without the employment of words clearly evincing a legislative intent to that effect.

2. CORPORATIONS—*right of stockholders to examine books of corporation organized by special charter.* A corporation organized by special charter prior to the adoption of section 13 of the General Corporation Act is not subject to the provisions thereof.

3. MANDAMUS—*what essential to issuance of writ at common law compelling corporation to allow stockholder to examine its books.* A demand for inspection made upon the proper officer, with the statement of a sufficient reason why the inspection is desired, and a refusal to allow inspection, are necessary before the officers of a corporation can be adjudged so derelict in the performance of their

duty towards the aggrieved stockholder as to justify the compelling by *mandamus* of the inspection sought.

MANDAMUS. Appeal from the Superior Court of Cook county; the Hon. BEN M. SMITH, Judge, presiding. Heard in this court at the October term, 1908. Affirmed. Opinion filed January 24, 1910.

ELIJAH N. ZOLINE, for appellant.

E. R. BLISS and GEORGE GILLETTE, for appellees.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

Appellant, a stockholder in the respondent corporation, filed his petition for a *mandamus* commanding the respondent corporation and its officers to permit him to examine the books, papers and records of the corporation. A demurrer to the petition having been sustained, it was afterwards amended. Respondents filed an answer to the amended petition, to which, after denial of motion by petitioner to strike out certain parts of the answer, he interposed a general and special demurrer. Upon the hearing of this demurrer it was, on motion of respondents, carried back to the amended petition and sustained by the court, whereupon, petitioner electing to stand by his demurrer, the amended petition was dismissed with costs against petitioner, from which order and judgment petitioner prosecutes this appeal, seeking a reversal. The carrying back of the demurrer to the answer to the amended petition, and sustaining the same to the amended petition, eliminates from the case the answer of respondents. Our inquiry on this review is consequently limited to the one controlling question—does the amended petition state such facts which, uncontradicted, entitles petitioner to the writ of *mandamus* prayed.

The respondent corporation was organized under a special act of the Illinois Legislature passed February 14, 1859, and amended by the same authority by a further act passed February 6, 1865. These acts

are public acts, and are to be taken judicial notice of as such.

The original petition was framed and the right to the writ grounded in virtue of the general incorporation act and the powers conferred by section 13 of that act. When the demurrer of respondents to that petition was sustained, upon the holding of the court that the general incorporation Act had no application to the respondent corporation, for the reason that it was incorporated and existed under special legislative enactments, the amended petition was drawn in an attempt to state a case which would entitle petitioner to the writ of *mandamus* sought by force of the common law. Section 13, chapter 32 Revised Statutes, title "Corporations," which is the general corporation Act of the state, reads thus: "It shall be the duty of the directors or trustees of every stock corporation to cause to be kept at its principal office or place of business in this state correct books of account of all its business, and every stockholder in such corporation shall have the right at all reasonable times, by himself or by his attorney, to examine the records and books of account of the corporation." The averments of the amended petition, it is contended, state sufficient facts entitling petitioner to the writ of *mandamus* prayed by force of the common law. These averments are to the effect that the board of directors, without the consent of petitioner or authority from the stockholders, executed a mortgage conveying all the property of the respondent corporation to secure its bonds, to be issued from time to time as the board of directors may direct; that such board is, in such issue, controlled by instructions from the New York financial firm of J. P. Morgan & Co., to whom large commissions for the sale of such bonds have been paid, and that petitioner has learned, through the public press, that the respondent company "has spent large sums of its money for the purpose of influencing the voters of the city of Chicago to vote favorably upon

the ordinance of February 11, 1907, at the election held in April, 1907;   *   *   *   that the inspection of the books, contracts and accounts of said railway company would reveal other irregularities and breaches of trust on the part of the directors and officers of said company.'' It seems from petitioner's original and amended petitions that the learned counsel who now appears for him acted in all that was done in the subject-matter of this controversy for his client, under a power of attorney given for that purpose prior to instituting this litigation; that several interviews were had between such counsel and some of the officers and one of the counsel of the respondent corporation, and that at one time petitioner's counsel had access to certain books, from which he made some memoranda, and was offered a copy of certain proceedings appearing upon the record book, which latter counsel refused, and insisted upon continuing indefinitely his examination of and probing into the books and records of the respondent corporation, therefrom to judge of the condition of its affairs and the legality of its proceedings.

Counsel, at the request of the representative of the respondent corporation, left his task without completing it, and it is averred by the amended petition that he has not been able to resume or complete that task. In the succeeding attempt to examine the books, records, etc., of the respondent corporation, counsel, representing his client, proceeded upon the assumption of his right so to do without making any special demand or assigning any particular reason why his request should be granted. It was of the essence of the right to examine that a demand for such examination should have been made, accompanied with a statement revealing its purpose and object. Such demand and accompanying statement cannot be dispensed with. They are not simply important, but absolutely essential, in order to charge the respondent corporation with such a dereliction of its duty in its refusal as to make it amenable to the writ of *mandamus* and to

entitle the petitioner to so proceed to obtain, in that way, the redress sought, when wrongfully denied. The amended petition contains no information from which an inference would arise that such legal requirement had been met. We shall base our decision upon two grounds, deeming all other questions raised and urged upon us in argument as non-essential to the conclusions reached: First, does the right to the writ of *mandamus* demanded exist under section 13, chapter 32 R. S. *supra,* and is it inapplicable by reason of the fact that the respondent corporation is the creature of a special charter? Second, does the amended petition by its averments state necessary facts which entitle petitioner, as a matter of law, to an award of the writ of *mandamus* in force of the common law?

First. The Acts of the legislature creating the respondent corporation antedate the general incorporation Act, chapter 32 *supra,* and section 13 thereof. Those Acts constitute a contract between the state and the corporation, at least until the state, in the exercise of its powers, changes or alters the same by appropriate legislation. Until the state does so, the contract thus created remains inviolable. It was undoubtedly within the lawmaking power of the state to make section 13 *supra* applicable to and binding upon existing corporations brought into being as the creatures of special legislation, had it seen fit to so provide. Some sections of chapter 32 *supra* are made so binding by special provision that they shall be. It is doing no violence to the settled canons of construction to hold that the legislature not having so provided, did not so intend. Such is the trend of the Illinois cases cited. Wherever the general corporation Act has been held operative as to antecedent corporations, it has resulted from the fact that the Act, or some part of it, by the words used clearly made them subject to such provisions. Without any words clearly indicating an intent to make such corporations subject thereto, they will not be regarded as included by implication from words

of uncertain meaning used; nor will presumptions be indulged contrary to the letter and spirit of such Act. Stone v. Kellogg, 165 Ill. 192, was a *mandamus* proceeding aimed at a corporation organized under the general corporation Act *supra*. In this case it was held that section 13, as to incorporations created under that Act, was enacted to relieve against the rigors of the common law, but nothing there said in any wise related to the effect of section 13 on corporations previously existing under special laws. Still it was there laid down as the law, that, at common law, before a *mandamus* could be awarded some specific interest must be shown by the applicant for the writ which rendered the examination of the corporation books, etc., sought, necessary or beneficial. The argument of counsel that the provision in section 1 of the Act of February 14, 1859, that the corporation was created "with all the powers and authority incident to corporations," and by section 4 that the limitation as to power should be such as not "inconsistent with the laws of the state," amounted to a declaration that the corporation was subject to the general corporation laws of the state, is fallacious and without force. That such corporation may be bound by subsequent legislation has already been conceded, but it must be confined within the limits of such laws as are expressly aimed at it, as contradistinguished from the general laws of the state on that subject thereafter enacted. The statutes themselves demonstrate in many places that existing corporations under special charters are not affected by general corporation laws. The language used when the legislative intent is manifested that corporations specially chartered shall be included in the general Act is such as is found in section 5 of the general corporation act, which reads: "The provisions of this section shall apply to and be binding upon all corporations now existing by virtue of any special charter granted by this state." Surely, if section 13 was so intended to operate, like or similar language would

have been incorporated into it to evidence such intent. Cases and instances might be multiplied, but to do so would serve no useful purpose. Such is the uniform doctrine of our courts, and on analysis of the cases we find no departure therefrom. We therefore conclude that petitioner has no right to a writ of *mandamus* in virtue of the general incorporation statutes of this state.

Second. Petitioner having unsuccessfully invoked the statute, we come to consider his right to the remedy sought by the course of the common law. In the first instance a demand for inspection made on the proper officer, with a statement of a sufficient reason why the inspection is desired, and a refusal to allow inspection, are necessary before the officers of a corporation can be adjudged so derelict in the performance of their duty toward the aggrieved stockholder as to justify the compelling by *mandamus* of the inspection sought. Stone v. Kellogg *supra;* People v. Walker, 9 Mich. 328; Williams v. College, 45 Ind. 170; Dye v. State, 70 Oh. St. 231; Giddings v. Quartermaster, 25 Mich. 340.

The amended petition fails to aver that when counsel for petitioner demanded the inspection he assigned any reason or purpose entitling him to a compliance with such demand. That a mortgage of the property of the respondent company was authorized by the board of directors, to secure an unlimited amount of bonds, to be sold through the medium of J. P. Morgan & Co., for which they were to receive a commission, in our judgment, unexplained, falls far short of being a sufficient reason for an inspection of the books, records, papers and documents of the corporation. Why this conduct of the corporation was improper or injurious to the rights of petitioner as a stockholder, is unexplained. What he expected to discover by an inspection, which he did not already know, does not appear. What wrongdoing he expected to unearth is not even suggested. That the money to be received from a sale of the bonds was to be misapplied, is not claimed, or that

the bonds were to be given away or improperly disposed of is not charged. Paying commissions on the sale of bonds is an everyday occurrence, and a resort to financial houses in Wall street to find an outlet for such bonds is oftentimes not only a necessity, but a prudent method of placing a large issue of bonds upon the market. What petitioner states he learned from the daily press, without any disclosure as to the purport of the news, is altogether of too uncertain a character to be worthy of notice by a court of law. The petition as amended does not show either a sufficient or proper reason for inspection, and for aught that appears to the contrary the motive of petitioner may be improper, and to harass and annoy, and for no legitimate, useful purpose, as affecting the rights of petitioner as a stockholder. The object which petitioner has in view in an inspection, he fails to state, and we are not at liberty to assume that his object is either proper or malign. That must be adjudged from the facts averred, and we find none on which we can predicate a finding as to the purpose to be served by the inspection sought.

It is our opinion that the demurrer to the answer to the amended petition was rightfully carried back and sustained to the latter pleading, and the petition for a writ of *mandamus* dismissed.

The judgment of the Superior Court is affirmed.

*Affirmed.*