## Frank E. Furst, Appellee, v. W. T. Rawleigh, Appellant.

### Gen. No. 5280.

CORPORATIONS—*what does not justify refusal to permit examination of books by stockholder.* A refusal to permit a stockholder to examine the books of a corporation is not justified because of the fact that to permit such examination might result in business competition; the fact that such stockholder is interested in a rival competing company does not necessarily indicate an unlawful and improper purpose in seeking inspection of books of account and records.

Mandamus. Appeal from the Circuit Court of Stephenson county; the Hon. JAMES S. BAUME, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed May 18, 1910.

**Statement by the Court.** On April 16, 1908, Frank E. Furst filed a petition in the Circuit Court of Stephenson county for a writ of *mandamus* to compel W. T. Rawleigh, president and treasurer of the W. T. Rawleigh Medical Company, an Illinois corporation, to permit him or his attorney to examine the books of account and records of the said company.

The petition alleged that Furst was a stockholder in the company and that Rawleigh had control of its books and records; that Rawleigh informed him in December, 1907, while he was a stockholder and director of the company, that he would not be permitted to inspect the books and records; and that in March, 1908, he demanded permission to inspect them and was refused; that in April, 1908, he made a demand upon Rawleigh to see said books and records and was refused. The petition concludes with a prayer that a writ of *mandamus* issue, directed to W. T. Rawleigh as president and treasurer of said corporation, commanding him to permit the petitioner to inspect all the books of account and records of said corporation over which he had control.

Rawleigh's answer admitted that he was president and treasurer of the corporation and averred that its books and records were under the control of its secretary; that the company had an authorized capital stock of $1,000,000, of which $512,000 par value had been issued; that the petitioner owned thirty-five shares of the par value of $100 each; that the business of the company was making and selling medicines, extracts and essences through about eight hundred salesmen; that it had about fifty kinds of medicines and proprietary articles put up according to certain secret formulas invented by them and known only to its employes; that it had spent a large amount of money in experimenting and perfecting the same; that for five years prior to the first day of January, 1908, the petitioner was in the employ of the said company and for the last three years of his employment was general manager and had access to the books of account and was familiar with its financial condition; that as director he participated in all the meetings of the directors and stockholders; that on January 1, 1908, he left the employ of said corporation, and with others organized a corporation known as the Furst-McNess Company for the purpose of manufacturing and selling articles in competition with the Rawleigh Company; that one of the motives of the petitioner was to procure a working knowledge of the new products put out by the company and of its new salesmen; that at the annuel meeting April 6, 1908, defendant as president, submitted his annual report showing a complete statement of the finances of the company for the year ending February 29, 1908; that petitioner was present and made no objection; that the business of the company amounted to about $750,000 per annum; that one of petitioner's motives was to harass, annoy and to interfere with the proper conduct of the business and that such examination would result in great annoyance and interference with the conduct of the business of said company; that the knowledge so obtained by the petitioner

would destroy the value of the formulas, and of the capital stock represented by them; that the motive of the petitioner was improper and illegitimate. The answer concluded with a prayer in the nature of a demurrer.

The petition was amended stating the facts more in detail and alleging that the petitioner's motives in seeking the inspection were proper and legitimate; that he had no desire to harass said company or to interfere with its business except so far as might be necessary to protect his rights as a stockholder; that at two different periods during the last year the sum of $20,000 had been set aside subject only to the personal check of W. T. Rawleigh; that if the petitioner were permitted to inspect the books and records of said corporation, he would be able to ascertain whether said sums had been converted to other uses than those of the corporation; that, notwithstanding the fact that the profits had increased and accumulated, there had been paid on its common stock since August, 1905, but two dividends of five per cent each; that one of these dividends was paid in July, 1907, at which time petitioner was a director of said corporation; but that the amount of said dividend was not determined nor said dividend declared by the board of directors at any meeting at which the petitioner was present; that said board of directors never voted on the amount of said dividend nor on its declaration or payment at any legal meeting, but that the amount and payment of said dividend was determined by W. T. Rawleigh; that said Rawleigh had stated that he would so manage said corporation that it would not pay larger dividends than five per cent so long as petitioner was a stockholder; that he had stated to the petitioner that said corporation would not pay larger dividends than five per cent for a great many years; that the petitioner believed that said corporation was earning not less than forty per cent per annum on the par value of the common stock and that there was on hand a

large cash balance available for the purpose of paying dividends, but that the last annual statement of said corporation issued to its stockholders in April, 1908, was so devised as not to show the amount of cash on hand, and that said statement was intentionally so made in order to conceal from the petitioner the amount of cash on hand; that Rawleigh could and would compel the petitioner to sell his stock at a sacrifice; that Rawleigh dominated and controlled the board of directors; that their meetings were simply held to ratify his decisions; that he stated that he expected and intended the board of directors to carry out his wishes; that after a protest as to such management, petitioner was not notified of directors' meetings except the annual meeting at which the officers were elected; that while petitioner was general manager he was not in charge of the business and never had complete and full access to all the records and books of account of said corporation, but depended for information upon the reports and statements which were furnished by the bookkeeper; that upon his tendering his resignation on December 1, 1907, to take effect January 1, 1908, defendant instructed the bookkeeper to cease furnishing the petitioner with reports and statements of the conditions of the business; that he wished to ascertain the true financial condition of the corporation and if there were not funds on hand which should be distributed to the stockholders as dividends and if there were any record of what became of the two sums of $20,000 and to find out whether the affairs of said corporation had been conducted in a legal manner. It excepted from the prayer of the petition for inspection, the report register of salesmen, the correspondence and contracts with them and the formulas and secret processes of manufacturing the preparations.

Rawleigh's answer was amended admitting that he owned seventy-five per cent of the capital stock of said company, and that he, with his near relatives, over

ninety per cent, and denying that two sums of $20,000 each had been set aside subject only to his personal check; but averring that a cash fund had been created for the purpose of taking care of certain additions to the plant and purchasing property; that both five per cent dividends were declared by the board of directors at a regular meeting; that defendant had no more to do with declaring the amount and frequency of said dividends than any other stockholder; that while the petitioner might disclaim any improper motive, yet as an active competitor with a knowledge of the business of the company, even if the secret formulas and processes were not disclosed to him directly, his examination of the bookkeeper's and treasurer's accounts would disclose a large volume of information in regard to the formulas and processes, thus destroying to a great extent their value; that an examination of such books would also disclose names of the salesmen employed even without an examination of the report register of salesmen; that the petition was for the purpose of forcing defendant or some one largely interested in the company to purchase petitioner's stock at an extortionate price.

To the answer as amended, a demurrer was sustained. Thereafter, the answer was further amended by adding the averment that the petitioner had used the information furnished him at the annual meeting in April, 1908, for the purpose of causing the assessment of the property of the company to be increased more than $30,000. A demurrer to the answer as finally amended was sustained and Rawleigh elected to stand by his answer. The court ordered a peremptory writ of *mandamus* to issue commanding W. T. Rawleigh forthwith to admit petitioner or his attorney to the office of the Rawleigh Company and give him or them full access to the books of account and records of the company (excepting the corporation records kept by the secretary, to wit: the stockholder's minute book, the directors' minute book, the stock certificate

book, the stock certificate register, the transfer record of stock certificates, the dividend register, the ledger of stockholders' accounts, the report register of salesmen, the correspondence and contracts with salesmen, and formulas and secret processes of manufacturing preparations sold by the company), at all reasonable times from day to day during business hours, until a complete examination of the financial condition of the corporation should be made by the petitioner or his attorney, and that the defendant pay the costs. Rawleigh excepted and prosecutes this appeal.

W. N. CRONKRITE, for appellant.

CHARLES H. GREEN, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

The question whether or not appellee is entitled to a writ of *mandamus* to compel appellant as an officer of the W. T. Raleigh Medical Company to permit him to examine the books of account and records of that corporation, is presented by the demurrer to appellant's answer to the petition. Appellee was a stockholder owning $3,500 at its face value of the capital stock. He had large interests to protect and the right to inform himself as to the affairs and conditions of the company, if necessary by the examination of the records and books of account of the company at any reasonable and proper time. The petition was amply sufficient, and unless it can be said that the answer showed sufficient reason for refusing the writ, the judgment of the Circuit Court must be affirmed.

The rights at common law of the stockholders of a corporation to examine its books and records, and the effect of section 13, chapter 32 of the Revised Statutes of this state upon the common law right, are fully considered in Stone v. Kellogg, 165 Ill. 192, a case

similar to the one at bar. The court there quoted with approval from Foster v. White, 86 Ala. 467, where it was held that a provision of the Alabama statute similar to our own was not merely declaratory of the common law, but was enacted to protect small and minority stockholders against the power of the majority, by furnishing an opportunity and mode to ascertain, establish and maintain their rights, and intelligently to perform their corporate duties; that the only express limitation to the right of inspection of a stockholder under that statute was that the right should be exercised at reasonable and proper times; and that the implied limitation was that it should not be exercised from idle curiosity or for improper or unlawful purposes; that in all other respects the statutory right was absolute; that the statute was founded on the principle that the shareholder had a right to be fully informed as to the condition of the corporation, the manner in which its affairs were conducted and how the capital stock to which he had contributed was employed and managed. The court said in the Stone case: "This interpretation of the statute of Alabama made by the Supreme Court of that state is, we think, a correct one, and is as liberal to the officers and agents of the corporation having the custody of the books, or to the majority of the stockholders or directors under whose orders they may act, as would be permissible to give to our own statute."

Appellant does not question the authority of Stone v. Kellogg, *supra,* but contends that the averments in the answer bring the case at bar within the implied limitation, that the right of inspection shall not be exercised for improper or unlawful purposes; and in support thereof argues that up to January 1, 1908, the petitioner, being in the active management of the company, was fully cognizant of its financial condition; that just prior to his filing the petition he was furnished with a statement of the financial condition of the company at its annual meeting; that he had started

a competing company; that upon leaving the employ of the company, he carried away monthly and weekly statements that had come into his hands as manager, and that in so doing, his motive was sinister; that he had used the statements furnished him as a stock-holder in procuring an increased assessment of the property of the company.

The petition alleged that appellee never had complete and full access to all the records and books of account of the company; that the annual statement did not show the amount of cash on hand; and this was not denied by the answer. The answer admitted that appellant borrowed $10,000 from the company, and averred that it was paid back with interest, but at what rate of interest the answer did not state. The petitioner had a right to know what use was being made of the money in which he had an interest and what the income from it was, and was not obliged to rely upon appellant's report for the information when an inspection of the books and records would show the actual condition. The averment in the answer upon which appellant bases his charge that appellee's motive was sinister in carrying away the weekly and monthly reports furnished him while manager, was, that in organizing the Furst-McNess Company, he "used the statements furnished him as an employe of the company for the purpose of showing to capitalists the wonderful money-making prospects of such a business." The only way in which appellant could be thereby injured would be by the creation of competition. As competition is legitimate in business and in accord with public policy, the motive prompting it cannot be said to be sinister. The fact that appellee was interested in a rival and competing company does not necessarily indicate an improper and unlawful purpose in asking inspection of the books of account and records. In Cobb v. Lagarde, 129 Ala. 494, a case similar to the one at bar, an answer was filed charging bad faith, improper purpose, hostility, and that petitioners

were owners of and engaged in a rival and competitive business; and the court there said: "The fact of the petitioners being stockholders in a rival concern, and that they may thereby gain some advantage by an inspection of the books of the defendant company, does not necessarily show an improper purpose in making demand for inspection, and will not deprive them, as stockholders, of their right of investigation into the management of the affairs of said company." Appellee's purpose in furnishing information from which the taxes of the company were raised cannot be said to be unlawful. His interest had to bear its proportion of the increased tax, and he is to be commended therefor rather than deprived of a legal right. There was no sufficient allegation in the answer from which it can be made to appear from the admission made by the demurrer that the object and purpose of the petitioner were improper and unlawful or were to injure the corporation. "It is no sufficient answer to such a petition to impugn the motives of the petitioner." Stone v. Kellogg, *supra.* Appellee stated in his petition that he had no desire to see the formulas or become informed of the process by which said Rawleigh's remedies were prepared; that in seeking said examination he had no intention or desire to see the list of the names of salesmen or any of them in the employ of said W. T. Rawleigh Medical Company, and that he so stated to said defendant, W. T. Rawleigh, said president and treasurer, when he demanded to see said books of account and records; that in these matters he was willing to submit to any reasonable restrictions consistent with due and adequate protection of his own interest, which the court had power to impose. We are of the opinion that the court below sufficiently protected appellant's rights by the limitations placed upon appellee's right of inspection; therefore there was no error in sustaining the demurrer to the answer.

The judgment is affirmed.

*Affirmed.*